**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel:     (310) 819-3470

**KESSLER TOPAZ MELTZER
 & CHECK, LLP**
JENNIFER L. JOOST (Bar No. 296164)
(jjoost@ktmc.com)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel:     (415) 400-3000
Fax:     (415) 400-3001

*Counsel for Plaintiff City of Hollywood Police
Officers' Retirement System*

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF HOLLYWOOD POLICE OFFICERS' RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>            Plaintiff,<br><br>        v.<br><br>FIRST REPUBLIC BANK, JAMES H. HERBERT, II, HAFIZE GAYE ERKAN, MICHAEL J. ROFFLER, OLGA TSOKOVA, MICHAEL D. SELFRIDGE, NEAL HOLLAND, and KPMG, LLP,<br><br>            Defendants. | Case No. 3:23-cv-1993<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**CLASS ACTION**<br><br>DEMAND FOR JURY TRIAL |

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS
CASE NO. 3:23-cv-1993

Plaintiff City of Hollywood Police Officers' Retirement System ("Plaintiff"), by and through its counsel, alleges the following based upon personal knowledge as to itself and its own acts, and upon information and belief as to all other matters, including the investigation of Plaintiff's counsel, which included, among other things, a review of regulatory filings made by Defendants (defined below) with the Federal Deposit Insurance Commission ("FDIC"), wire and press releases published by First Republic Bank ("First Republic" or the "Company"), analyst reports and advisories about the Company, media reports concerning the Company, judicial filings and opinions, and other publicly available information.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.   NATURE OF THE ACTION AND OVERVIEW

1.   This securities class action is brought on behalf of all persons and entities who purchased or otherwise acquired First Republic securities between January 14, 2021, and March 14, 2023, inclusive (the "Class Period"), seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5 promulgated thereunder.

2.   First Republic is a California state-chartered bank and trust company that provides private banking, private business banking, and private wealth management.  Specifically, First Republic provides its clients with a wide range of financial products, including residential, commercial, and personal loans, deposit services, and private wealth management, including investment, brokerage, insurance, trust, and foreign exchange services.  First Republic targets high-net worth households and businesses, with a particular focus on sustained client relationships and single-family mortgage lending.  During the Class Period, First Republic's common stock traded on the New York Stock Exchange ("NYSE") under the ticker symbol "FRC," and First Republic's preferred stock traded on the NYSE under the ticker symbols "FRC-PrH," "FRC-PrI," "FRC-PrJ," "FRC-PrK," "FRC-PrL," "FRC-PrM," and "FRC-PrN."

3.   Throughout the Class Period, First Republic and its executives repeatedly touted the Company's "safe and sound" business model, assuring investors that First Republic was strongly-

positioned—particularly due to its purportedly "diversified deposit base"—to weather a variety of economic conditions, and downplayed the risks that rising interest rates posed to the Company's net interest income ("NII") and net interest margin ("NIM")—critical financial metrics that calculated the income generated on the Company's interest-earning assets—and the value of the Company's mortgage loan portfolio.

4.      In FDIC filings and multiple public statements throughout the Class Period, First Republic misrepresented the strength of the Company's balance sheet, liquidity, and position in the market.  Among other things, the Defendants understated and concealed the magnitude of the risks facing the Company's business model that would result from any decision by the Federal Reserve System (the "Fed") raising the federal funds rate, thereby undermining the value of the Company's loan and securities portfolios and liquidity.

5.      On October 14, 2022, Plaintiff and other members of the Class (defined below) began to learn the truth about the risks the Company faced from the Fed increasing the federal funds rate when the Company announced disappointing third quarter 2022 financial results, reporting that First Republic's NII growth had slowed to 20.6% year-over-year (down from 24.1% year-over-year growth the prior quarter) and its NIM had plummeted to 2.71% (down from 2.80% the prior quarter).  First Republic attributed the decrease in the Company's NIM to "average funding costs increasing more rapidly than the offsetting increase in the average yields on interest-earning assets."

6.      On this news, the price of First Republic common stock declined by $22.14 per share, or more than 16%, from a closing price of $134.73 per share on October 13, 2022, to a closing price of $112.59 per share on October 14, 2022.

7.      Notwithstanding assurances from First Republic and its executives about the Company's operating strength and ability to withstand a rising interest rate environment, additional corrective disclosures surfaced on March 8, 2023, when SVB Financial Group ("SVB"), the parent company of Silicon Valley Bank (considered by many analysts to be a peer bank of First Republic) announced that it was seeking to raise approximately $2.25 billion in capital due to continued higher interest rates, pressured public and private markets, and elevated levels of deposit attrition.  SVB also

disclosed that it had sold "substantially all of its available for sale securities portfolio," incurring a loss of approximately $1.8 billion on the sale.  In response, SVB's depositors rushed to withdraw their funds out of fear over SVB's solvency.  On March 10, 2023, SVB collapsed, and regulators seized control of the bank, placing SVB in FDIC receivership.  Investors immediately began to question First Republic's ability to withstand the interest rate environment and remain solvent.

8.     On this news, the price of First Republic common stock declined by an astonishing $83.79 per share, or more than 72% over three trading sessions, from a closing price of $115.00 per share on March 8, 2023, to a closing price of $31.21 per share on March 13, 2023.

9.     Despite statements from First Republic and its executives confirming the stability of the Company's business model, investors learned more about First Republic's vulnerability on March 15, 2023, after the end of the Class Period, when S&P Global Ratings ("S&P") downgraded its long-term issuer credit rating and preferred stock issue rating for First Republic due to the risks of deposit outflows leading to increased funding costs.  That same day, Fitch Ratings ("Fitch") announced that it had also downgraded First Republic's credit rating, observing that "FRC's funding and liquidity profile has changed and represents a 'weakest link.'"

10.     On the news of the downgrades, the price of First Republic common stock declined by $8.47 per share, or more than 21%, from a closing price of $39.63 per share on March 14, 2023, to a closing price $31.16 per share on March 15, 2023.

## II.     JURISDICTION AND VENUE

11.     Plaintiff's claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

12.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

13.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), because First Republic's principal executive offices are in San Francisco, California, and because many of the acts and conduct that constitute the violations of law

complained of herein, including the dissemination to the public of materially false and misleading information, occurred in this District.

14.     In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications, and the facilities of the national securities markets.

III.   **PARTIES**

15.     Plaintiff is a pension plan that provides benefits to eligible police officers in Hollywood, Florida.  As set forth in the accompanying certification, incorporated by reference herein, Plaintiff purchased First Republic securities at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

16.     Defendant First Republic is a California state-chartered bank and trust company, with principal executive offices in San Francisco, California.

17.     Defendant James H. Herbert, II ("Herbert") served as the Company's Chief Executive Officer ("CEO") from 1985 until March 13, 2022.  Herbert also served as the Company's Chairman from 2007 until December 31, 2021, and has served as the Company's Executive Chairman since March 2022.

18.     Defendant Hafize Gaye Erkan ("Erkan") served as the Company's President from 2017 until December 31, 2021, and served as the Company's co-CEO from July 2021 until December 31, 2021.

19.     Defendant Michael J. Roffler ("Roffler") has served as the Company's President since January 1, 2022, and CEO since March 2022 (having served as acting CEO from January 2022).  Prior to assuming the positions of President and CEO, Roffler served as the Company's Chief Financial Officer ("CFO") from 2015 until December 2021.

20.     Defendant Olga Tsokova ("Tsokova") served as First Republic's Chief Accounting Officer throughout the Class Period.  From January 2022 to November 2022, Tsokova also served as

the Company's acting CFO.  Tsokova has served as the Company's Deputy CFO since November 2022.

21.     Defendant Michael D. Selfridge ("Selfridge") served as the Company's Chief Banking Officer at all relevant times.

22.     Defendant Neal Holland ("Holland") has served as the Company's CFO since November 2022.

23.     Defendants Herbert, Erkan, Roffler, Tsokova, Selfridge, and Holland are collectively referred to herein as the "Individual Defendants."

24.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of First Republic's reports to the FDIC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  Each of the Individual Defendants was provided with copies of the Company's reports alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and/or were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading.

25.     Defendant KPMG, LLP ("KPMG") is an international accounting firm organized under the laws of the State of Delaware, with principal executive offices in New York, New York. At all relevant times, KPMG audited First Republic's financial statements.

26.     First Republic, the Individual Defendants, and KPMG are collectively referred to herein as "Defendants."

IV.     **SUBSTANTIVE ALLEGATIONS**

    A.     **Background**

27.     Founded in 1985, First Republic is a California state-chartered bank and trust company that provides private banking, business banking, and private wealth management.  Specifically, First

Republic provides its clients with a wide range of financial products, including residential, commercial, and personal loans, deposit services, and private wealth management, including investment, brokerage, insurance, trust, and foreign exchange services.  Much of First Republic's customer base consists of wealthy households living in U.S. coastal cities, and a key component of First Republic's lending strategy has been to provide these wealthy households with residential mortgages at low interest rates.

### B. Defendants' False and Misleading Statements

28.    The Class Period begins on January 14, 2021, to coincide with First Republic's announcement of its fourth quarter and full year 2020 financial results.  On that day, First Republic issued a press release, which was also filed with the FDIC on Form 8-K.  The press release, among other things, reported that the Company's NII had increased to $892.7 million (up 24% year-over-year) and NIM had increased to 2.73% (up from 2.71% the prior quarter).  The same press release quoted Defendant Herbert, stating "First Republic continues to deliver *safe, consistent growth*, reflecting the strength of our client focused service model."

29.    The Company's accompanying earnings conference call held that same day included comments from Defendant Herbert touting First Republic's "continuing *consistent performance under a wide range of economic conditions*" as demonstrating the "stability and long-term nature and power of [its] client service model."  Defendant Erkan highlighted to investors that the Company "continue[d] to maintain *a diversified deposit funding base*."  Defendant Roffler further assured investors that First Republic's "balance sheet is very safe."

30.    On February 26, 2021, First Republic filed its 2020 annual report on Form 10-K with the FDIC (the "2020 Annual Report").  The 2020 Annual Report, which was signed by Defendants Roffler, Herbert, Erkan, and Tsokova, reported that, as of December 31, 2020, First Republic had total assets of $143.5 billion and total deposits of $114.9 billion.

31.    The 2020 Annual Report explained that "[t]he level of [NII] is primarily a function of the average balance of interest-earning assets, the average balance of interest-bearing liabilities and the spread between the contractual yield on such assets and the contractual cost of such liabilities."

In the 2020 Annual Report, First Republic represented that "[w]e engage in various activities to manage our liquidity risk, including maintaining a diversified set of funding sources and holding sufficient liquid assets to meet our cash flow and funding needs."  The Company further represented that "we maintain a contingency funding plan and perform scenario-based stress-testing to ensure resilience in case of expected and unexpected future events."  The 2020 Annual Report also stated that "Management believes that the sources of available liquidity are well-diversified and adequate to meet all reasonably foreseeable short-term and intermediate-term demands."  In addition, First Republic represented that "[w]e utilize a variety of interest rate risk management tools to evaluate our interest rate risk."  Critically, the 2020 Annual Report downplayed and concealed the likelihood and extent of the risks posed to the Company by potential increases to interest rates, any related changes in deposit mix, and resulting deposit outflows.

32.     Defendants Herbert and Roffler provided certifications under the Sarbanes-Oxley Act of 2002 ("SOX"), stating that they had reviewed the 2020 Annual Report and that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

33.     The 2020 Annual Report included an audit report signed by the Company's auditor, KPMG, reflecting the results of its audit of First Republic's 2019 and 2020 financial statements. KPMG certified that "the consolidated financial statements referred to above present fairly, in all material respects, the financial position of the Bank as of December 31, 2020 and 2019, and the results of its operations and its cash flows for each of the years in the three-year period ended December 31, 2020, in conformity with U.S. generally accepted accounting principles."

34.     On April 14, 2021, the Company issued a press release announcing its first quarter 2021 financial results.  In the press release, which was also filed with the FDIC on Form 8-K, First Republic reported that its NII had increased to $938.8 million (up 24.8% year-over-year) and NIM had declined modestly to 2.67% (down from 2.73% the prior quarter).  First Republic attributed the NIM decline to "higher average cash balances during the quarter."

35. During the Company's earnings conference call that same day, Defendant Herbert told investors that the Company's "long-term steady approach has led to consistent success through a wide variety of environments" and that First Republic's "strength, safety and soundness continue to be reflected in strong capital, liquidity and credit quality." Defendant Roffler echoed Herbert's claim that First Republic had strong fundamentals, stating that "we run the bank with strong credit, capital, and liquidity at all times."

36. In response to a question from Morgan Stanley analyst Kenneth Zerbe about the Company's deposit growth, Defendant Erkan explained that First Republic was "***very well positioned to help manage client needs across different macro environments*** with both on and off-balance sheet liquidity solutions, and optimizing our funding mix overall." Responding to a question from Jefferies analyst Casey Haire about the Company's liquidity position, Defendant Erkan stated that "[o]ur liquidity position remains very strong."

37. On July 13, 2021, the Company issued a press release announcing its second quarter 2021 financial results. In the press release, which was also filed with the FDIC on Form 8-K, First Republic reported that its NII had increased to $1.0 billion (up 27.5% year-over-year) and NIM increased to 2.68% (up from 2.67% the prior quarter).

38. During the Company's earnings conference call that same day, Defendant Herbert reassured investors that First Republic prioritized "operating in a ***very safe and sound manner***," and Defendant Erkan touted the Company's "diversified deposit funding base."

39. During the same call, in response to a question from Wolfe Research analyst Bill Carcache regarding the impact short-term interest rate increases would have on the Company, Defendant Herbert stated:

> It probably won't make much difference operationally as to how we run the business. We do run a very matched book . . . so, if you look at our simulation models, ***why [the] rising rate environment is not a particularly threatening thing***. The inversion which you implied in your question, I think, is always a little problematic. But ***the real problem buried in an inversion is what it does to the economy generally, not so much what it does to us in the short run.*** Inversions don't last very long. So they generally don't mess with our balance sheet very much.

40.     On October 13, 2021, the Company issued a press release announcing its third quarter 2021 financial results.  The press release, which was also filed with the FDIC on Form 8-K, featured a quote from Defendant Erkan again highlighting "the safety and stability of First Republic."  The press release also reported that First Republic's NII increased to $1.1 billion (up 26.7% year-over-year), while its NIM decreased modestly to 2.65% (down from 2.68% the prior quarter).  The Company attributed the decline in NIM to "higher average cash balances during the quarter."

41.     During the Company's earnings conference call that same day, Defendant Erkan touted First Republic's deposit growth that was "well diversified across client types, regions and industries and a healthy mix of both new and existing clients."

42.     On November 4, 2021, while speaking at the BancAnalysts Association of Boston Conference, Defendant Tsokova highlighted the "consistency and stability of First Republic and *ability to deliver consistent results over time over different rate environments, different economic cycles*."  Specifically, Defendant Tsokova noted that the Company's NIM had "remained consistent throughout cycles."  Tsokova also downplayed the decline in First Republic's NIM, telling investors:

> Obviously, we have recently been experiencing some pressure on the margin because of the higher cash levels, the overall rate environment and competition, but margin continues to be within the kind of stable zone.  And we expect to have our margin within our guided range for 2021 [of 2.65% to 2.75%], but most likely on the lower end of the range.  But despite some compression or pressure on the margin, one of the important metrics for us is [NII].  And despite the margin pressures we were able to grow . . . interest income.

43.     During the same conference, in response to a question about the Company's NIM in a rising interest rate environment, Defendant Selfridge stated that "*it will stabilize*, and I think we'll continue to grow and I think *we'll continue to be able to manage our NIM within a historic range.*"

44.     On January 14, 2022, the Company issued a press release announcing its fourth quarter and full year 2021 financial results.  The press release, which was also filed with the FDIC on Form 8-K, reported that for the fourth quarter of 2021 First Republic had NII of $1.1 billion (up 25.4% year-over-year) and NIM of 2.68% (up from 2.65% the prior quarter).

45.     During the Company's earnings conference call that same day, Defendant Roffler responded to a question from Jefferies analyst Casey Haire about the impact of interest rate hikes on NIM by downplaying and concealing the risk to the Company, explaining that "[t]he reality of it is, we're focused more on [NII] growth than we are what the reported [NIM] might be.  And yes, it's been at the lower end of our range for a while, but if you look at our [NII] growth, it's been incredibly strong in the last several quarters."

46.     During the same earnings conference call, Defendant Selfridge touted the strength of the Company's funding, stating:

> In terms of funding, it was an exceptional year.  Total deposits were up $41 billion or 36% compared to a year ago.  ***We continue to maintain a diversified deposit funding base***.  Checking deposits represented 72% of total deposits at year-end, our highest level ever;  and business deposits represented 60% of total deposits at year-end.  The average rate paid on all deposits for the quarter was just 5 basis points, leading to an overall funding cost of just 12 basis points.

47.     On February 28, 2022, First Republic filed its 2021 annual report on Form 10-K with the FDIC (the "2021 Annual Report").  The 2021 Annual Report, which was signed by Defendants Tsokova, Roffler, and Herbert, reported that, as of December 31, 2021, First Republic had total assets of $181.1 billion and total deposits of $156.3 billion.

48.     In connection with First Republic's financial results, the 2021 Annual Report explained that "[t]he level of [NII] is primarily a function of the average balance of interest-earning assets, the average balance of interest-bearing liabilities and the spread between the yield on such assets and the cost of such liabilities."  In the 2021 Annual Report, First Republic represented that "[w]e engage in various activities to manage our liquidity risk, including maintaining a diversified set of funding sources and holding sufficient liquid assets to meet our cash flow and funding needs."  The Company further represented that "we maintain a contingency funding plan and perform scenario-based stress-testing to ensure resilience in case of expected and unexpected future events."  The 2021 Annual Report also stated that "Management believes that the sources of available liquidity are well-diversified and adequate to meet all reasonably foreseeable short-term and long-term demands."  In addition, First Republic represented that "[w]e utilize a variety of interest rate risk

management tools to evaluate our interest rate risk."  Critically, the 2021 Annual Report downplayed and concealed the likelihood and extent of the risks posed to the Company by potential increases to interest rates and any related changes in deposit mix.

49.     As required by SOX, Defendants Roffler and Tsokova certified that they had reviewed the 2021 Annual Report and that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

50.     The 2021 Annual Report included an audit report signed by the Company's auditor, KPMG, reflecting the results of its audit of First Republic's 2020 and 2021 financial statements. KPMG certified that "the consolidated financial statements referred to above present fairly, in all material respects, the financial position of the Bank as of December 31, 2021 and 2020, and the results of its operations and its cash flows for each of the years in the three-year period ended December 31, 2021, in conformity with U.S. generally accepted accounting principles."

51.     On April 13, 2022, the Company issued a press release announcing its first quarter 2022 financial results.  In the press release, which was also filed with the FDIC on Form 8-K, First Republic reported NII of $1.1 billion (up 22% year-over-year) and NIM of 2.68% (consistent with the prior quarter).  In the press release announcing these results, Defendant Tsokova assessed the Company positively, stating that "[l]oans and deposits grew nicely during the first quarter, while credit quality, liquidity and capital all remained very strong."

52.     During the Company's earnings conference call that same day, Defendant Roffler assured investors that First Republic would fare strongly even as interest rates increased, explaining that "[a]s we look ahead to the rising rate environment, ***First Republic remains well-positioned***" and "[o]ur balance sheet is strong and our service model continues to thrive."

53.     Defendant Tsokova echoed these assurances, stating that "[w]ith a consistent focus on credit, capital and liquidity, we continue to operate in a safe and sound manner."

54.     During the same earnings conference call, Defendant Herbert further assured investors that even with increasing interest rates, First Republic's NIM would remain stable and its NII could

even expand, stating: "the [interest rate] increase is going to be more violent than we have predicted, but . . . we've redone our forward projections around seven increases if I have that right. *We did seven increases and the NIM stays the same.  The NII still can – still expands*."

55.    On July 14, 2022, the Company issued a press release announcing its second quarter 2022 financial results.  In the press release, which was also filed with the FDIC on Form 8-K, First Republic reported that NII increased to $1.2 billion (up 24.1% year-over-year) and NIM increased to 2.80% (up from 2.68% the prior quarter).  First Republic attributed the increase in NIM to "lower average cash balances, as well as average yields on interest-earning assets increasing more than the offsetting increase in average funding costs."

56.    During the Company's earnings conference call that same day, Defendant Herbert repeated his claim that First Republic "maintain[s] a steadfast focus on long-term *safety and stability*."  He further assured investors:

> Our model and our culture have proven to be very successful long-term through all economic cycles.  In fact, during times of broader economic uncertainty, our holistic client-centric service is even more valued by our clients.  During these times, we often see our new client household acquisition rate increase as it is currently doing.  *Today, our model is stronger than ever*.  This has once again driven our excellent performance during this most recent quarter, and *we're well positioned to go ahead in the current conditions*.

57.    Defendant Tsokova claimed that "[w]ith a consistent focus on credit, capital and liquidity, *we continue to operate in a safe and sound manner*.  Our credit quality remains excellent."

58.    Addressing First Republic's funding, Defendant Selfridge identified the Company's funding base as consisting of "over 90% deposits, which drove an overall funding cost of just 16 basis points" and touted a deposit base that "*remains well diversified*."

59.    On August 9, 2022, while speaking at the UBS Financial Services Conference, Defendant Roffler assured investors that interest rate increases would positively impact the Company, explaining that "the rise in rates actually gives [bankers] a much greater opportunity to engage with clients and prospects.  When we're at a zero interest rate, no one wants to talk to you about a [Certificate of Deposit]."  Roffler further represented that "the loan rates are adjusting, our deposit

rates are adjusting" and "right now, they're very in balance and right as we would have anticipated them to be in a more challenging environment."

60.     On September 12, 2022, while speaking at the Barclays Global Financial Services Conference, Defendant Roffler assured investors of the Company's "consistency and stability." Further, in discussing First Republic's strategy of promoting Certificates of Deposit ("CDs") in the rising interest rate environment to cultivate client growth, Defendant Tsokova stated:

> So we expect the mix of deposits [is] going to shift.  And we start to see more interest with CDs.  Our clients are looking for high yield and our CD balances have been quite low over the last few years; run rate is still low.
>
> And now we start having those conversations, but it's not just about the CDs [ ] couple of promotions that we had over the last few weeks, but it's also having a conversation with the clients by bringing the other relationships, other checking accounts in other banks.
>
> So we expect to see the CDs percentage of total deposits grow. Historically those percentages were in low-teens to mid-teens and now we're just under 5%.  So we expect that to continue to grow towards more historic levels.

61.     The above statements identified in paragraphs 28-60 were materially false and misleading, and failed to disclose material adverse facts about the Company's business and operations.  Specifically, Defendants misrepresented the strength of the Company's balance sheet and liquidity position, while also understating the significant pressure rising interest rates posed to First Republic's business model.  Defendants also misrepresented the strength of the Company's ability to deliver consistent results across different interest rate environments, the diversity of the Company's deposit funding base, and the Company's ability to generate NII growth and maintain stable NIM.

**C.     The Truth Begins to Emerge**

62.     The truth began to emerge on October 14, 2022, when the Company announced disappointing third quarter 2022 financial results.  Specifically, First Republic reported that NII growth had slowed to 20.6% year-over-year (down from 24.1% year-over-year growth the prior quarter) and NIM had plummeted to 2.71% (down from 2.80% the prior quarter).  First Republic

attributed the decrease in NIM to "average funding costs increasing more rapidly than the offsetting increase in the average yields on interest-earning assets."

63.     On this news, the price of First Republic common stock declined by $22.14 per share, or more than 16%, from a closing price of $134.73 per share on October 13, 2022, to a closing price of $112.59 per share on October 14, 2022.

64.     Even after reporting slowing NII growth and plummeting NIM, however, First Republic and its executives continued to misrepresent the extent of the Company's exposure to the risks posed by increasing interest rates.  During the Company's October 14, 2022 earnings conference call, Defendant Roffler sought to reassure investors that, despite the Company's declining NIM, the current environment created opportunities that would benefit First Republic:

> [S]ince our last call, the Fed increased rates very rapidly.  Additionally, the market's expectation for future rate hikes also increased.  We have responded to the sharp rise in rates by providing clients with attractive deposit opportunities through CDs and money market accounts.  While this client-centric approach puts pressure on our [NIM] in the near term, it will allow us to retain and acquire great clients who will stay with us and grow with us for many years to come.

65.     Similarly, Defendant Herbert continued to represent that the Company's business model was positioned to withstand rising interest rates, stating that "[d]espite the interim rate conditions, our long-term focus always remains, maintaining exceptional credit standards, so we can focus on the future, rather than the past, operating with strong levels of capital to support franchise growth as we serve existing clients and acquire new ones, steady execution of our simple, straightforward model."  Herbert further assured investors that "what's going on here is a temporary problem on the margin coming from the steepness of the run-up" and that the Company had a "very, very strong capacity to raise CDs" as First Republic waited for "the mortgage book [to] catch-up in relatively short period of time."

66.     When the Company held its Investor Day on November 9, 2022, First Republic and its executives continued to assure the market of the purported strength and stability of First Republic's business model.  For example, Defendant Roffler represented that "we can be very nimble and

entrepreneurial . . . we've had yield curve inversions before where the margin changes a bit over time, and we've had to adapt, and we do so quickly."

67.     On December 7, 2022, while speaking at the Goldman Sachs 2022 US Financial Services Conference, Defendant Roffler touted that "[s]afety and soundness has been a hallmark of the bank for its founding 37 years ago, *safe credit, strong capital levels, and liquidity*."  Addressing the "unprecedented rate environment," Roffler downplayed the risks presented by continued interest rate increases, explaining that the Company was focused on growing its customer base:

> [T]he Fed is likely to go probably 50 basis points next week, I'm guessing, and that only is going to increase the inversion and the curve. And again, we think through the long term of that.  Right.  *We're going to continue to serve clients we're going to continue to deliver for them* and we know that does create a bit of a challenging environment.  It's a very competitive environment right now also.  But again, that's where service matters in that competitive environment.  All right.  *I think at the end of the day.  If we think forward, one of the great things we do is compound households*.  At a continued double-digit low-teen, mid-teen rate on household acquisition.  Right.
>
> And that then is a precursor to future growth.  And so the delivery of service leads to increased households via through the wealth management business, through some of our CD activities currently or clients who come to us from a relending relationship, when their friend or colleague talk to us.  And so *this is a measure of our continued success in our markets if we're growing households* because over time those households do more with us and that is what's led to the growth that I showed in the very first page between loans, deposits, assets or management.

68.     On January 13, 2023, the Company issued a press release announcing its fourth quarter and full year 2022 financial results.  The press release, which was also filed with the FDIC on Form 8-K, reported that, for the fourth quarter of 2022, NII had decreased for the first time in fourteen quarters to $1.2 billion (down from $1.3 billion the prior quarter), NII growth stalled at 4.9% year-over-year (down from 20.6% year-over-year growth the prior quarter), and NIM had plummeted even further to 2.45% (down from 2.71% the prior quarter).

69.     Despite declines in both NII and NIM, during the Company's earnings conference call the same day, Defendant Herbert claimed that "it was our best year ever in many ways" and that First Republic's "time-tested business model and service culture continue to perform really well."

Addressing the interest rate environment, Herbert assured investors that the Company would continue to prosper:

> Let me take a moment to provide some perspective on the current rate environment and the Fed tightening cycle as we see it. Since our last call about 90 days ago, the Fed has raised rates another 125 basis points. At the same time, the 10 year treasury has declined 50 basis points. The resulting increased rate inversion has begun to put some pressure on our [NIM] and [NII]. However, history and experience has shown that this type of inverted yield curve has a limited duration. Cycles are just that, they're cycles.
>
> During First Republic's 37 year history, there have been five tightening cycles. **We've continued to grow and prosper through them and especially after each one**.

70.     Defendant Roffler further assured investors that the Company's prospects were strong, stating:

> As we look to a more challenging year ahead, **we remain well-positioned to deliver safe, strong growth** through the consistent execution of our service focused culture and business model.
>
> *          *          *
>
> As Jim mentioned, since mid-November, we've been operating with a challenging yield curve. To help us navigate the margin pressure in the near term, we continue to moderate our expense growth. At the same time, we remain focused on the long-term and continue to leverage our reputation of exceptional service to drive new business and grow total households.

71.     On February 28, 2023, First Republic filed its 2022 annual report on Form 10-K with the FDIC (the "2022 Annual Report"). The 2022 Annual Report, which was signed by Defendants Holland, Roffler, Tsokova, and Herbert, reported that, as of December 31, 2022, First Republic had total assets of $212.6 billion and total deposits of $176.4 billion.

72.     In connection with First Republic's financial results, the 2022 Annual Report explained that "[t]he level of [NII] is primarily a function of the average balance of interest-earning assets, the average balance of interest-bearing liabilities and the spread between the yield on such assets and the cost of such liabilities." In the 2022 Annual Report, First Republic represented that "[w]e engage in various activities to manage our liquidity risk, including maintaining a diversified set of funding sources and holding sufficient liquid assets to meet our cash flow and funding needs."

The Company further represented that "we maintain a contingency funding plan and perform scenario-based stress-testing to ensure resilience in case of expected and unexpected future events." The 2022 Annual Report also stated that "Management believes that the sources of available liquidity are well-diversified and adequate to meet all reasonably foreseeable short-term and long-term demands." In addition, First Republic represented that "[w]e utilize a variety of interest rate risk management tools to evaluate our interest rate risk." Critically, however, the 2022 Annual Report downplayed and concealed the likelihood and extent of the risks posed to the Company by potential increases to interest rates and any related changes in deposit mix.

73.     As required by SOX, Defendants Roffler and Holland certified that they had reviewed the 2022 Annual Report and that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

74.     The 2022 Annual Report included an audit report signed by the Company's auditor, KPMG, reflecting the results of its audit of First Republic's 2021 and 2022 financial statements. KPMG certified that "the consolidated financial statements referred to above present fairly, in all material respects, the financial position of the Bank as of December 31, 2022 and 2021, and the results of its operations and its cash flows for each of the years in the three-year period ended December 31, 2022, in conformity with U.S. generally accepted accounting principles."

75.     The above statements identified in paragraphs 64-74 were materially false and misleading, and failed to disclose material adverse facts about the Company's business and operations. Specifically, Defendants misrepresented the strength of the Company's balance sheet and liquidity position, while also understating the significant pressure rising interest rates posed to First Republic's business model. Defendants also misrepresented the strength of the Company's ability to deliver consistent results across different interest rate environments, the diversity of the Company's deposit funding base, and the Company's ability to generate NII growth and maintain stable NIM.

76.     Investors continued to learn the truth about the risks facing First Republic after the market closed on March 8, 2023, when SVB, the parent company of Silicon Valley Bank (largely

considered to be a peer bank of First Republic) disclosed that it had sold "substantially all" of its $21 billion available-for-sale securities portfolio and incurred a loss of approximately $1.8 billion on that sale.  SVB also announced that it was seeking to raise approximately $2.25 billion in capital in what would be a futile attempt to cover deposit withdrawals and shore up its deteriorating balance sheet. Investors immediately grew concerned about First Republic's ability to withstand the rising interest rate environment and called into question the solvency of First Republic, which, like Silicon Valley Bank, catered to wealthy clients and was exposed to the prospect of significant deposit outflows that would stress its liquidity.

77.     Then, on March 10, 2023, Silicon Valley Bank collapsed, and regulators seized control of the bank, placing it in FDIC receivership.  That collapse amplified investor concerns about First Republic's liquidity and financial strength.

78.     Although the strength of its business model had been called into question, the Company and its executives continued to insist that First Republic was strongly situated to withstand the challenging economic environment.  Specifically, that same day, the Company issued a press release, which was also filed with the FDIC on Form 8-K, in which First Republic reassured investors of its "continued safety and stability and strong capital and liquidity positions."  In the press release, First Republic insisted that:

- "First Republic's deposit base is ***strong and well-diversified***";

- "First Republic's ***liquidity position remains very strong***";

- "First Republic's ***very high-quality investment portfolio is stable and represents a modest percentage of total bank assets***";

- "First Republic has consistently maintained a strong capital position with capital levels significantly higher than the regulatory requirements for being considered well-capitalized"; and

- "First Republic has a long-standing track record of exceptional credit quality."

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS
CASE NO. 3:23-cv-1993                                                                                                      18

79.     On March 12, 2023, just two days after the Company's assurances that it had strong liquidity, First Republic issued a press release announcing that it had obtained $10 billion of additional borrowing capacity from the Fed and JPMorgan Chase & Co.

80.     As a result of the disclosures on March 8, 2023, through March 12, 2023, the price of First Republic common stock declined by $83.79 per share, or more than 72% over three trading sessions, from a closing price of $115.00 per share on March 8, 2023, to a closing price of $31.21 per share on March 13, 2023.

81.     Also, on March 12, 2023, despite the need to have an additional $10 billion in borrowing capacity, in the same press release, which was also filed with the FDIC on Form 8-K, First Republic sought to reassure investors that it had "*further enhanced and diversified its financial position* through access to additional liquidity from the Federal Reserve Bank and JPMorgan Chase & Co."  In the press release First Republic explained that "[t]he additional borrowing capacity from the Federal Reserve, continued access to funding through the Federal Home Loan Bank, and ability to access additional financing through JPMorgan Chase & Co. increases, diversifies, and further strengthens First Republic's existing liquidity profile."

82.     The press release also quoted Defendant Herbert, who stated that "First Republic's *capital and liquidity positions are very strong*," and that the Company "*operate[s] with an emphasis on safety and stability at all times, while maintaining a well-diversified deposit base*."

83.     The above statements identified in paragraphs 78, 81-82 were materially false and misleading, and failed to disclose material adverse facts about the Company's business and operations.  Specifically, Defendants misrepresented the strength of the Company's balance sheet and liquidity position, while also understating the significant pressure rising interest rates posed to First Republic's business model.  Defendants also misrepresented the strength of the Company's ability to deliver consistent results across different interest rate environments, the diversity of the Company's deposit funding base, and the Company's ability to generate NII growth and maintain stable NIM.

**D.    Post-Class Period Events**

84.    On March 15, 2023, after the end of the Class Period, despite assurances by First Republic and its executives about the safety and stability of the Company's business model, investors continued to learn the truth about First Republic's vulnerability, when S&P downgraded its long-term issuer credit rating on First Republic to "BB+" from "A-," its senior unsecured issue rating to "BB+," its subordinated stock issue rating to "BB-," and its preferred stock issue rating to "B." S&P explained that "we believe the risk of deposit outflows is elevated at First Republic," predicting that "if deposit outflows continue, we expect First Republic would need to rely on its more costly wholesale borrowings. This would encumber its balance sheet and hurt its modest profitability."

85.    Additionally, S&P expressed concern about the concentration of First Republic's deposit base, which it explained "presents heightened funding risks in the current environment." S&P also forecast a negative outlook, explaining "[w]e believe the bank's business position will suffer after the volatile swings in its stock price and heightened media attention surrounding deposit volatility. We think its business stability has weakened as market perceptions of its creditworthiness have declined."

86.    S&P also placed its ratings for First Republic on "CreditWatch with negative implications," which it explained "reflects the potential for further funding and liquidity deterioration."

87.    That same day, Fitch also announced that it had downgraded First Republic's Long-Term Issuer Default Rating ("IDR") to "BB" from "A-" and its Short-Term IDR to "B" from "F1," and placed First Republic on "Rating Watch Negative."

88.    Fitch characterized the downgrades as the result of its "revised view of FRC's funding and liquidity profile in the current environment," noting that "***Fitch believes that FRC's funding and liquidity profile has changed and represents a 'weakest link' relative to other rating factors***" and explaining that "FRC's ***deposit concentrations*** are now viewed as a rating weakness." Fitch also expressed concern about the Company's "strategic focus on banking wealthy and financially sophisticated customers in select urban coastal markets in the U.S.," explaining "[t]his not only drives a high proportion of uninsured deposits as a percentage of total deposits but also results in deposits that can be less sticky in times of crisis or severe stress."

89.     In addition to the downgrades, Fitch placed First Republic's "Viability Rating" on "Rating Watch Negative," explaining that this decision "reflects the uncertain environment for funding and liquidity, despite policy efforts to soothe market and depositor perception."

90.     On the news of the downgrades, the price of First Republic common stock declined by $8.47 per share, or more than 21%, from a closing price of $39.63 per share on March 14, 2023, to a closing price of $31.16 per share on March 15, 2023.

91.     On March 16, 2023, the financial media reported that eleven of the largest U.S. banks—including JPMorgan, Bank of America, Wells Fargo, Citigroup, Goldman Sachs, and Morgan Stanley—had joined together to deposit $30 billion with First Republic in an effort to provide additional liquidity to the bank.  After the market closed, First Republic also disclosed that it had already significantly drawn on its borrowing capacity.  That draw on credit included First Republic's borrowings from the Federal Reserve Bank as well as an increase in short-term borrowings from the Federal Home Loan Bank, totaling $10 billion.

92.     On this news, the price of First Republic common stock declined by $11.24 per share, or nearly 33%, from a closing price of $34.27 per share on March 16, 2023, to a closing price of $23.03 per share on March 17, 2023.

93.     The next day, on March 17, 2023, Moody's also downgraded First Republic's credit rating to junk status and noted that Moody's could issue a further downgrade, citing a deterioration in First Republic's financial profile and the challenges the Company faced due to it increased reliance on high-cost funding amid deposit withdrawals.  Moody's further noted that, notwithstanding First Republic's receipt of a $30 billion deposit infusion, "the . . . path for the bank back to sustained profitability remains uncertain."  In addition, Moody's explained that First Republic "faces the eventual need to sell assets to repay these obligations" and "[t]his could lead to the crystallization of the unrealized losses on its AFS [available-for-sale] or HTM [held-to-maturity] securities."  But, Moody's warned "[e]ven if the crystallization of unrealized losses is avoided, . . . the impact on [First Republic's] profitability from higher interest expense will still be significant."

94.     Then, on March 19, 2023, investors learned more about First Republic's precarious financial position, when S&P further downgraded the Company's long-term issuer credit rating into "junk" territory, from "BB+" to "B+," also lowering the Company's senior unsecured issue rating to "B+," the Company' subordinated issue rating to "B-," and the Company's preferred stock issue rating to "CCC." S&P opined that "the business faces substantial long-term challenges" and expressed concern that the Company had "tapped higher-cost secured funding extensively over the last week."

95.     As a result of the disclosures on March 17, 2023, and March 19, 2023, the price of First Republic common stock declined by $10.85 per share, or more than 47%, from a closing price of $23.03 per share on March 17, 2023, to a closing price of $12.18 per share on March 20, 2023.

96.     First Republic common stock declined more than 94% during the Class Period, from a high price of $222.86 per share (as of November 17, 2021), to a low price of $12.18 per share (as of March 20, 2023).   The decline has eliminated $37.6 billion from First Republic's market capitalization value, resulting in substantial losses for investors.

## V.     PLAINTIFF'S CLASS ACTION ALLEGATIONS

97.     Plaintiff brings this class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities who purchased or otherwise acquired First Republic securities during the Class Period (the "Class").  Excluded from the Class are Defendants, their agents, directors and officers of First Republic, and their families and affiliates.

98.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

99.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

        a.     Whether Defendants violated the Exchange Act;

        b.     Whether Defendants omitted and/or misrepresented material facts;

c.      Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

d.      Whether Defendants knew or recklessly disregarded that their statements were false and/or misleading;

e.      Whether the prices of First Republic securities were artificially inflated during the Class Period; and

f.      The extent of damage sustained by members of the Class and the appropriate measure of damages.

100.    Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

101.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests that conflict with those of the Class.

102.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

## VI.    APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

103.    Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

a.      Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.      The omissions and misrepresentations were material;

c.      The Company's securities traded in an efficient market;

d.      The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

e.   Plaintiff and the Class purchased First Republic securities between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

104.   At all relevant times, the market for the Company's securities was efficient because: (1) as a regulated issuer, the Company filed periodic public reports with the FDIC; and (2) the Company regularly communicated with public investors using established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

**VII.   NO SAFE HARBOR**

105.   Defendants' "Safe Harbor" warnings accompanying any forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

106.   Defendants are liable for any false and/or misleading forward-looking statements pleaded because, at the time each forward-looking statement was made, the speaker knew the forward-looking statement was false or misleading and the forward-looking statement was authorized and/or approved by an executive officer of the Company who knew that the forward-looking statement was false.  None of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

**VIII.   LOSS CAUSATION/ECONOMIC LOSS**

107.   Defendants' wrongful conduct directly and proximately caused the economic loss suffered by Plaintiff and the Class.  The prices of First Republic securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.  As a

result of their purchases of First Republic securities during the Class Period, Plaintiff and the Class suffered economic loss, i.e., damages, under the federal securities laws.

## IX.      <u>ADDITIONAL SCIENTER ALLEGATIONS</u>

108.     During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of First Republic securities during the Class Period.

## X.      <u>CLAIMS AGAINST DEFENDANTS</u>

### <u>COUNT I</u>

**Violations of Section 10(b) of the Exchange Act and**

**SEC Rule 10b-5 Promulgated Thereunder**

**Against All Defendants**

109.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

110.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and the Class; and (2) cause Plaintiff and the Class to purchase First Republic securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants took the actions set forth herein.

111.     Defendants: (1) employed devices, schemes, and artifices to defraud; (2) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (3) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices thereof in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5.

112.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class suffered damages in connection with their respective purchases of the Company's securities during the Class Period.

### COUNT II

**Violations of Section 20(a) of the Exchange Act**

**Against the Individual Defendants**

113.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

114.    The Individual Defendants acted as controlling persons of First Republic within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the false financial statements filed by the Company with the FDIC and disseminated to the investing public, the Individual Defendants had the power to influence and control—and did influence and control, directly or indirectly—the decision-making of the Company, including the content and dissemination of the various false and/or misleading statements.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

115.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular accounting practices giving rise to the securities violations as alleged herein, and exercised the same.

116.    As described above, the Company and the Individual Defendants each violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable under Section 20(a) of the Exchange Act.  As a direct and proximate result of this wrongful conduct,

1  Plaintiff and other members of the Class suffered damages in connection with their purchases of

2  Company securities during the Class Period.

3       **WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

4            a.    Determining that this action is a proper class action under Rule 23 of the

5  Federal Rules of Civil Procedure;

6            b.    Awarding compensatory damages and equitable relief in favor of Plaintiff and

7  other members of the Class against all Defendants, jointly and severally, for all damages sustained as

8  a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

9            c.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred

10 in this action, including counsel fees and expert fees; and

11           d.    Such other and further relief as the Court may deem just and proper.

12 **XI.    <u>DEMAND FOR JURY TRIAL</u>**

13       Plaintiff hereby demands a trial by jury.

1    DATED: April 24, 2023                    Respectfully submitted,

2                                             **BERNSTEIN LITOWITZ BERGER**
                                              **& GROSSMANN LLP**
3

4                                             */s/ Jonathan D. Uslaner*
                                              JONATHAN D. USLANER (Bar No. 256898)
                                              (jonathanu@blbglaw.com)
5                                             2121 Avenue of the Stars, Suite 2575
                                              Los Angeles, CA 90067
6                                             Tel:     (310) 819-3470

7                                             HANNAH ROSS
                                              (hannah@blbglaw.com)
8                                             AVI JOSEFSON
                                              (avi@blbglaw.com)
9                                             SCOTT R. FOGLIETTA
                                              (scott.foglietta@blbglaw.com)
10                                            1251 Avenue of the Americas
                                              New York, NY 10020
11                                            Tel:     (212) 554-1400
                                              Fax:     (212) 554-1444
12
                                              **KESSLER TOPAZ MELTZER**
13                                            **& CHECK, LLP**

14                                            JENNIFER L. JOOST (Bar No. 296164)
                                              (jjoost@ktmc.com)
15                                            One Sansome Street, Suite 1850
                                              San Francisco, CA 94104
16                                            Tel:     (415) 400-3000
                                              Fax:     (415) 400-3001
17
                                              NAUMON A. AMJED
18                                            (namjed@ktmc.com)
                                              DARREN J. CHECK
19                                            (dcheck@ktmc.com)
                                              RYAN T. DEGNAN
20                                            (rdegnan@ktmc.com)
                                              BARBARA A. SCHWARTZ
21                                            (bschwartz@ktmc.com)
                                              280 King of Prussia Road
22                                            Radnor, PA 19087
                                              Tel:     (610) 667-7706
23                                            Fax:     (610) 667-7056

24                                            *Counsel for Plaintiff City of Hollywood Police*
                                              *Officers' Retirement System*
25

26                                            **KLAUSNER KAUFMAN JENSEN**
                                              **& LEVINSON**
27
                                              ROBERT D. KLAUSNER
28                                            (bob@robertdklausner.com)

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS
CASE NO. 3:23-cv-1993                                                              28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STUART A. KAUFMAN
(stu@robertdklausner.com)
7080 NW 4th Street
Plantation, FL 33317
Tel:     (954) 916-1202
Fax:     (954) 916-1232

*Additional Counsel for Plaintiff City of Hollywood
Police Officers' Retirement System*

## CERTIFICATION PURSUANT TO
## <u>THE FEDERAL SECURITIES LAWS</u>

I, David Strauss, on behalf of the City of Hollywood Police Officers' Retirement System ("Hollywood Police"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Chairman of Hollywood Police. I have reviewed the complaint with our legal counsel. Based on legal counsel's knowledge and advice, Hollywood Police has authorized the filing of the complaint.

2. Hollywood Police did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Hollywood Police is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. Hollywood Police's transactions in the First Republic Bank securities that are the subject of this action are set forth in the chart attached hereto.

5. Hollywood Police has sought to serve as a lead plaintiff and representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motion for appointment as lead plaintiff or was not appointed lead plaintiff:

   *City of Hollywood Police Officers Retirement System v. Citrix Systems, Inc.*, 21-cv-62380 (S.D. Fla.)

6. Hollywood Police will not accept any payment for serving as a representative party on behalf of the Class beyond Hollywood Police's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 24th day of April, 2023.

Digitally signed by David Strauss
DN: cn=David Strauss, o=Hollywood Police
Officers' Retirement System, ou,
email=daves@hollywoodpolicepensionfun
d.com, c=US
Date: 2023.04.24 13:54:42 -04'00'

David Strauss
Chairman
*City of Hollywood Police Officers' Retirement System*

**City of Hollywood Police Officers' Retirement System**
**Transactions in First Republic Bank**

| <u>**Transaction**</u> | <u>**Date**</u> | <u>**Shares**</u> | <u>**Price**</u> |
|---|---|---|---|
| Purchased | 11/16/2021 | 6,825 | 220.8270 |
| Purchased | 7/11/2022 | 2,507 | 150.2139 |
| Purchased | 7/22/2022 | 3,110 | 157.7313 |
| Purchased | 8/5/2022 | 1,480 | 163.9048 |
| | | | |
| Sold | 2/11/2022 | (6,825) | 173.3679 |
| Sold | 10/25/2022 | (7,097) | 115.8666 |